# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | **02 C 6066** | **DATE** | Jan. 29, 2003 |
| **CASE TITLE** | Bernard Turnoy | v | Liberty Life Assurance Co. of Boston |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Memorandum opinion and order entered. Defendant's motion to dismiss counts I, II and III is granted. Plaintiff is granted leave to file an amended complaint.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | JAN 3 0 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 11 |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BERNARD TURNOY, )
)
Plaintiff, )
) No. 02 C 6066
v. )
) Judge Robert W. Gettleman
LIBERTY LIFE ASSURANCE COMPANY OF )
BOSTON, )
)
Defendant. )

DOCKETED
JAN 3 0 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff Bernard Turnoy filed a three-count complaint for monetary and declaratory relief against defendant Liberty Life Assurance Company of Boston ("Liberty") after Liberty denied his claim for disability benefits. In Count I, plaintiff seeks retroactive benefits allegedly owed to him under his long- and short-term disability insurance policies with Liberty, as well as a declaratory judgment with respect to the amount of benefits to which he is entitled in the future. Count II seeks damages for emotional distress arising out of Liberty's allegedly improper denial of benefits to plaintiff. In Count III, plaintiff asks the court to assess "the maximum penalty allowed" against defendant under 215 Ill. Comp. Stat. § 5/155, for Liberty's allegedly vexatious and unreasonable conduct.

Liberty has filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Counts I, II, and III are state law claims that are pre-empted by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 et seq. Further, Liberty argues that, to the extent plaintiff's complaint may be construed as stating a claim for denial of benefits under ERISA,

plaintiff's claims for compensatory and punitive damages, as well as a jury trial, should be stricken. For the reasons discussed herein, Liberty's motion to dismiss is granted with respect to all counts.

## BACKGROUND

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to rule on its merits. See Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering the motion, the court accepts the allegations of the complaint as true and views the facts in the light most favorable to plaintiff. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996).

The consideration of a Rule 12(b)(6) motion is generally restricted to the pleadings, which include the complaint, any exhibits attached thereto, and supporting briefs. Thompson v. Illinois Dept. of Professional Regulation, 300 F.3d 750, 753 (7th Cir. 2002). Accordingly, "where a plaintiff attaches documents [to his complaint] and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim." Id. at 754. With these standards in mind, the court turns to the facts of the instant dispute.

From November 1980 through March 2001, plaintiff worked as an agent/insurance producer on behalf of the Massachusetts Mutual Life Insurance Company ("Mass Mutual"). Plaintiff alleges that he was self-employed and worked as an independent contractor for Mass Mutual.

Plaintiff received group short- and long-term disability coverage through a Liberty group policy, No. GD3-810-253705/GF3-810-253705-01 (the "policy"), which was attached to plaintiff's complaint. According to the policy, eligible classes for insurance benefits include "agents, general agents, and general managers meeting the production requirements published

annually by the Sponsor." According to the definitions section of the policy, "'Sponsor' means [Mass Mutual] to whom the policy is issued." In addition, the policy provides that, (1) a covered person's application for insurance must be "made with Liberty through [Mass Mutual]," (2) all premiums are payable by Mass Mutual, and (3) before increasing premiums, Liberty must notify Mass Mutual, rather than individual covered persons, at least 31 days in advance.

The policy further defines eligibility for short- and long-term benefits. "All Agents who have a valid career agent contract, General Agents who have a valid general agent contract and General Managers who have a valid employment agreement" are eligible for short-term disability benefits. With respect to long-term disability benefits, the policy delineates two classes of eligible participants: Class 1 includes "[a]ll Agents who have a valid career agent contract, General Agents who have a valid general agent contract and General Managers who have a valid employment agreement participating in the Base Plan"; Class 2 includes "[a]ll Agents who have a valid career agent contract, General Agents who have a valid general agent contract and General Managers who have a valid employment agreement electing the Buy-Up Plan."

In late December 2000, plaintiff's health began to decline. On March 17, 2001, plaintiff alleges that he became unable to work due to cervical sponylosis, fatigue, cardiac disease and anxiety. On December 28, 2001, plaintiff sought disability benefits from Liberty, and his application was denied on February 5, 2002. In his appeal of that denial on March 1, 2002, plaintiff allegedly included reports from treating doctors that indicated that he could not perform his job of agent/insurance producer or any occupation providing comparable earnings.

Plaintiff alleges that Liberty failed to respond meaningfully to his March 1, 2002, appeal, and that he is owed benefits in the amount of $4255.90 per month since March 17, 2001, plus

3

interest. Plaintiff also seeks tort damages for emotional distress stemming from Liberty's denial of benefits, as well as punitive damages under Illinois law for Liberty's allegedly "vexatious and unreasonable" conduct.

In its motion to dismiss, Liberty contends that plaintiff's insurance policy falls within ERISA's definition of an "employee welfare benefit plan," as interpreted by the Seventh Circuit, and that his state-law claims are therefore preempted. Moreover, according to Liberty, even if plaintiff could colorably state a claim under § 1132(a)(1)(B) of ERISA, his claims for compensatory and punitive damages, as well as a jury trial, must be stricken.

Plaintiff responds that, (1) more discovery is needed to ascertain whether the policy falls within ERISA's safe harbor provision, 29 C.F.R. § 2510.3-1, (2) plaintiff is not a participant or beneficiary who is covered by ERISA, and (3) even if ERISA is applicable to the instant suit, plaintiff's 215 Ill. Comp. Stat. § 5/155 claim is not preempted.

## DISCUSSION

29 U.S.C. § 1002(1) defines "employee welfare benefit plan" as:

any plan, fund, or program ... established or maintained by an employer or by an employee organization ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services....

The Seventh Circuit has construed 29 U.S.C. § 1002(1) to include five elements: (1) a plan, fund or program, (2) established or maintained, (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other

4

training programs, day care centers, scholarship funds, prepaid legal services or severance benefits, (5) to participants or their beneficiaries. Ed Miniat, Inc. v. Globe Life Ins. Group, Inc., 805 F.2d 732, 738 (7th Cir. 1986). Within the Seventh Circuit, the definition of an "employee welfare benefit plan" is broad. Brundage-Peterson v. Compcare Health Services Ins. Corp., 877 F.2d 509, 511 (7th Cir. 1989).

ERISA's "safe harbor" regulation, 29 C.F.R. § 2510.3-1(j), further provides that an "employee welfare benefit plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which:

> (1) No contributions are made by an employer or employee organization;
> (2) Participation in the program is completely voluntary for employees or members;
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

The parties' disagreement focuses on whether, (1) Mass Mutual "established or maintained" the policy, such that the policy falls outside of ERISA's safe harbor provision, and (2) plaintiff, allegedly an independent contractor, is properly characterized as a participant or beneficiary who is covered by ERISA. The court addresses both of these issues below, before turning to the issue of preemption of plaintiff's state law claims.

For a plan to remain outside ERISA, employer neutrality is essential. Russo v. B & B Catering, Inc., 209 F. Supp. 2d 857, 860 (N.D.Ill. 2002). If an employer favors one or more plans over allowing covered persons to shop in the open market, or if an employer defines eligibility or

5

performs other administrative functions, ERISA may be implicated. See Brundage-Peterson, 877 F.2d at 511 ("An employer who creates by contract with an insurance company a group insurance plan and designates which employees are eligible to enroll in it is outside the safe harbor created by the Department of Labor regulation."); Russo, 209 F. Supp. 2d at 859-860. Thus, "only a minimal level of employer involvement is necessary to trigger ERISA." Id. at 860.

Numerous aspects of the policy convince the court that Mass Mutual "established or maintained" the policy and that ERISA's safe harbor provision does not apply to the instant dispute. To begin, the policy provides that the "sponsor" is "[Mass Mutual] to whom the policy is issued." To this end, eligible classes for insurance benefits include those agents, general agents and general managers who meet the production requirements published annually by Mass Mutual. A covered person's application for insurance must be "made with Liberty through [Mass Mutual]," and all premiums are payable by Mass Mutual.[1] Moreover, before increasing premiums, Liberty must notify Mass Mutual, rather than individual covered persons, at least 31 days in advance. Taken together, these facts compel the conclusion that Mass Mutual did not merely publicize the policy and collect premiums, as described in ERISA's safe harbor provision. Rather, as sponsor, Mass Mutual affirmatively established the policy, thus implicating ERISA.

Plaintiff cites Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 107 S.Ct. 2211 (1987), for the proposition that "an ERISA plan is an insurance program that requires active participation by the employer in its administration." In Fort Halifax, the Supreme Court addressed whether a

---

[1] The policy does not specify whether Mass Mutual actually defrays the cost of premiums, or simply collects premiums from covered persons and then remits them to Liberty. Drawing all inferences in plaintiff's favor, the court concludes for the purposes of this Rule 12(b)(6) motion that Mass Mutual plays a purely administrative function in this regard and does not contribute to the cost of premiums.

6

Maine statute that required employers to make a one-time severance payment for their employees was preempted by ERISA. In holding that the state statute was not preempted, the Court emphasized that "Congress pre-empted state laws relating to <u>plans</u>, rather than simply to <u>benefits</u>," and concluded that the state statute "neither establishes, nor requires an employer to maintain, an employee benefit <u>plan</u>." <u>Id.</u> at 11-12. (Emphasis in original.)

The instant case is distinguishable from <u>Fort Halifax</u>, which was premised, at least in part, on the Court's observation that the lump sum payment at issue was "predicated on the occurrence of a single contingency that may never materialize." <u>Id.</u> at 12. "The theoretical possibility of a one-time obligation in the future simply creates no need for an ongoing administrative program for processing claims and paying benefits." <u>Id.</u>

In contrast to the lump sum payment in <u>Fort Halifax</u>, the policy in the instant dispute, and its attendant premiums, are not theoretical. Rather, the policy explicitly provides that "premiums are due and payable monthly on the first day of each month." As sponsor of the policy, those premiums are payable by Mass Mutual. Further, as noted above, Mass Mutual determined eligibility requirements, and covered persons applied for insurance through Mass Mutual. Mass Mutual's assumption of these functions belies plaintiff's claim that the policy falls outside of ERISA.

Plaintiff next argues that, "[s]ince [plaintiff] was never an employee of Mass Mutual, for Liberty to allege that his claims are preempted by a law applicable to employees and their dependents is nonsensical." According to plaintiff, because he was neither a participant nor a

beneficiary, his claim to benefits is not governed by ERISA. See 29 U.S.C. § 1132(a)(1) (empowering participants and beneficiaries to initiate civil actions under ERISA).

29 U.S.C. § 1002(7) defines "participant" as "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." "Beneficiary" is defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

Plaintiff correctly points out that, for the purposes of a Rule 12(b)(6) motion, the court must accept the factual allegations in the complaint, including plaintiff's representation that, as an independent contractor, he was not an employee of Mass Mutual and therefore was not a "participant" under ERISA. If defendant wished to challenge the truthfulness of plaintiff's assertion, and submit additional evidence to that end, a summary judgment motion pursuant to Fed. R. Civ. P. 56 would have been the appropriate procedure.[2]

Regardless of whether plaintiff was an employee of Mass Mutual, and hence a "participant" under ERISA, however, the court concludes that he is properly considered a "beneficiary" to whom ERISA's provisions apply. Plaintiff readily concedes that he is "covered under the policy as an independent insurance agent." Accordingly, plaintiff qualifies as "a person

---

[2] Defendant attached "a copy of relevant redacted portions" of plaintiff's 1997, 1998, and 2000 tax returns, presumably to prove that plaintiff was an "employee" of Mass Mutual. Because the court concludes that plaintiff is properly characterized as a "beneficiary," the court need not address whether plaintiff is also considered an employee.

8

designated... by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." See 29 U.S.C. § 1002(8).

Plaintiff's independent contractor status does not compel a different result. Although the Seventh Circuit has not squarely addressed this issue, this court is persuaded by the Fifth Circuit's holding in Hollis v. Provident Life & Acc. Ins. Co., 259 F.3d 410 (5th Cir. 2001), cert. denied, ___ U.S. ___, 122 S.Ct. 1538 (2002), that an independent contractor may be considered a "beneficiary" under ERISA and thus subject to its provisions.[3] Persuaded by "the unremarkable conclusion that ERISA's definition of beneficiary means precisely what it says," the Hollis court held that the plaintiff, an independent contractor who was designated by the terms of an employee welfare benefit plan as being entitled to receive benefits, was an ERISA beneficiary. Id. at 416. See also Peterson v. Equitable Life Assur. Society of U.S., 57 F. Supp. 2d 692, 705 (W.D.Wis. 1999) (concluding that it was "self-evident" that an insurance agent who was suing to recover benefits under defendant's insurance plan was an ERISA beneficiary, notwithstanding his purported status as an independent contractor).

In Peterson v. American Life and Health Ins. Co., 48 F.3d 404, 409 (9th Cir. 1995), the Ninth Circuit similarly held that a partner in a partnership could properly be considered an ERISA beneficiary, even though he was not an ERISA participant. Rejecting the plaintiff's

---

[3]Trombetta v. Cragin Federal Bank for Savings Employee Stock Ownership Plan, 102 F.3d 1435 (7th Cir. 1996), cited by plaintiff for the proposition that "independent loan contractors [are] not entitled to employee benefits," is distinguishable from the instant case. In Trombetta, the Seventh Circuit did not address whether an independent contractor may be considered an ERISA beneficiary. Rather, the court concluded that the retirement benefit plan at issue gave its administrators discretionary authority to determine eligibility, and that the administrators' decision to exclude independent contractors from eligibility was not arbitrary and capricious. Id. at 1438-1440.

9

argument that the definition of "beneficiary" should be limited to persons such as spouses and dependents who are designated by participants to receive benefits, the Ninth Circuit was persuaded that "ERISA's plain language includes as beneficiaries not only those 'designated by a participant,' but also those who are designated to receive benefits '<u>by the terms of an employee benefit plan</u>.'" (Emphasis in original). Id. (citing 29 U.S.C. § 1002(8)). Accordingly, the court in Peterson concluded that "any person designated to receive benefits from a policy that is part of an ERISA plan may bring a civil suit to enforce ERISA." Id.

Nationwide Mutual Insurance Co. v. Darden, 503 U.S. 318, 112 S.Ct. 1344 (1992), cited by plaintiff, does not compel a contrary result. In Darden, the Supreme Court held that whether the plaintiff was an employee, and thus had standing as a "participant" to sue under ERISA, should be determined under the common law of agency. Id. at 323. The Darden court did not consider, and the parties did not address, whether the plaintiff could alternatively be considered an ERISA beneficiary. See Darden v. Nationwide Mutual Insurance Co., 796 F.2d 701, 704, n.3 (4th Cir. 1986) ("While an action may also be brought by a 'beneficiary,' 29 U.S.C. § 1132(a)(1), (3), or by a 'fiduciary,' 29 U.S.C. § 1132(a)(3), Darden makes no claim to a right of action in either of those capacities.").[4]

With these precedents in mind, the court concludes that plaintiff's purported status as an independent contractor does not preclude him from being an ERISA beneficiary. Accordingly, the court next addresses whether ERISA preempts plaintiff's state law claims.

---

[4] Similarly, Wolcott v. Nationwide Mutual Insurance Co., 884 F.2d 245 (6th Cir. 1989), cited by plaintiff, did not address whether an insurance agent qualified as an ERISA beneficiary. Rather, the court's decision focused on whether the plaintiff was properly considered an ERISA participant.

10

ERISA's preemption provision, 29 U.S.C. § 1144(a), provides, "Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." The court concludes, and plaintiff apparently concedes, that plaintiff's state law claims for breach of contract, emotional distress, and unreasonable and vexatious conduct under 215 Ill. Comp. Stat. § 5/155 "relate to" an ERISA plan and thus fall under ERISA's general preemption clause. See, e.g., Tomczyk v. Blue Cross & Blue Shield of Wisconsin, 951 F.2d 771, 777 (7th Cir. 1991) (state law breach of contract claim preempted by ERISA); Reilly v. Blue Cross & Blue Shield United of Wisconsin, 846 F.2d 416, 426 (7th Cir. 1988) ("any state claims... [for] breach of fiduciary duty, conspiracy, fraud or bad faith are preempted by ERISA"); Estate of Cencula v. John Alden Life Ins. Co., 174 F. Supp. 2d 794, 800 (N.D.Ill. 2001) ("Plaintiff's request for relief under section 155 'relates to' Defendant's ERISA benefit plan and therefore falls within the general preemption clause of § 1144(a).").

Plaintiff argues, however, that notwithstanding the applicability of ERISA's general preemption clause to his state law claims, plaintiff's § 5/155 claim falls under ERISA's saving clause and is therefore not preempted.[5] ERISA's saving clause, 29 U.S.C. § 1144(b)(2)(A), provides that "[e]xcept as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities."

---

[5]Plaintiff does not argue that his claims for breach of contract and emotional distress fall under the saving clause.

To determine whether the saving clause applies to a particular state law, the court must first determine whether that law is specifically directed to the insurance industry. Rush Prudential HMO, Inc. v. Moran, 536 U.S. 355, 122 S.Ct. 2151, 2159 (2002). The court next examines whether the state law regulates the business of insurance by applying the three factors used to spare insurance laws from federal preemption under the McCarran-Ferguson Act, 15 U.S.C. § 1011 et seq.: (1) whether the law has the effect of transferring policy holder risk; (2) whether the law is an integral part of the policy relationship between the insured and the insurer; and (3) whether the law is limited to entities within the insurance industry. Id. at 2163. Last, the court determines whether the state law at issue supplements or supplants the federal scheme by allowing beneficiaries "to obtain remedies under state law that Congress rejected in ERISA." Rush Prudential, 122 S.Ct. at 2166 (internal quotations omitted), citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987).

Applying these factors to plaintiff's § 5/155 claim, the court concludes that the saving clause does not apply, and thus plaintiff's claim is preempted. To begin, the court recognizes that the purpose of § 5/155, which was enacted as part of a revision to the Illinois Insurance Code, is to provide a remedy for insurer misconduct. Accordingly, § 5/155 is specifically directed towards insurance. See, e.g., Cencula, 174 F. Supp. 2d at 800.

Nonetheless, the court concludes that § 5/155 does not regulate the business of insurance as defined by the McCarran-Ferguson factors, and further supplants a federal scheme by allowing a beneficiary to obtain state law remedies that Congress rejected in ERISA. Although § 5/155 is limited to entities within the insurance industry, it does not transfer or spread policy holder risk, nor is the statute an integral part of the policy relationship between the insured and the insurer.

12

As noted by another court in this district in Buehler Ltd. v. Home Life Ins. Co., 722 F. Supp. 1554, 1561 (N.D.Ill. 1989), § 5/155 "does not govern the substantive content of the insurance contract, but merely regulates the procedural aspects of claims processing by providing certain remedies in the event of vexatious insurance practices." See also Pilot Life, 481 U.S. at 51 (finding that Mississippi's common law of bad faith was not "integral" to insurer-insured relationship because it did not define the terms of the relationship between the insurer and the insured, but rather declared only that, whatever terms have been agreed upon in the insurance contract, a breach of that contract may in certain circumstances allow the policyholder to obtain punitive damages).

Moreover, even if the court concluded that § 5/155 did satisfy the McCarran-Ferguson test, the saving clause still would not apply because § 5/155 permits a beneficiary to obtain remedies that were specifically rejected in ERISA. See Buehler, 722 F. Supp. at 1562 ("Section 155 allows a plaintiff to recover a substantial statutory penalty much akin to punitive damages and completely at odds with ERISA's implicit prohibition on punitive damages recoveries."). The court thus concludes that plaintiff's § 5/155 claim does not fall under the saving clause and is preempted by ERISA.

Because all of plaintiff's claims in the instant dispute are preempted by ERISA, the court grants defendant's motion to dismiss Counts I, II and III of the complaint.

## CONCLUSION

For the reasons stated herein, defendant's motion to dismiss Counts I, II, and III is granted. Plaintiff is granted leave to file an amended complaint alleging a claim or claims under ERISA. At the status report set for February 5, 2003, plaintiff shall inform the court and defendant whether he chooses to replead.

**ENTER:** **January 29, 2003**

**Robert W. Gettleman**
**United States District Judge**